**UNITED STATES of America,**

v.

**Frank TORO**

**No. 3:02CR362PCD.**

United States District Court, D. Connecticut.

July 8, 2004.

Christopher W. Schmeisser, Kari Anne Dooley, U.S. Attorney's Office, Bridgeport, CT, Kevin J. O'Connor, U.S. Attorney's Office, New Haven, CT, for Plaintiff.

*MEMORANDUM re: ORDER CORRECTING SENTENCE*

DORSEY, District Judge.

Pursuant to a mandate from the Second Circuit [Doc. No. 43], Defendant was resentenced on June 29, 2004, after his mo-

tion to vacate was decided on the narrow ground that *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) did not apply, as his sentence would not exceed the statutory maximum and the enhancement of his guideline involved sentencing factors, not elements of the offense. As noted in the Order Correcting Sentence, Defendant has now moved pursuant to FED. R.CRIM. P. 35(a) to correct the June 29, 2004 sentence, on the basis that there is a clear error and that Defendant's sentence is illegal and unconstitutional in light of *Blakely*.

## I. Background

On December 18, 2002 Defendant waived indictment and entered a guilty plea to one count of making a false statement in violation of 18 U.S.C. § 1001.[1] He was originally sentenced on June 5, 2003 pursuant to the United States Sentencing Guidelines ("USSG"). The base level for this violation is 6. U.S.S.G. § 2B1.1 In accordance with the Probation Office's recommendations, based on the loss of amount (11 levels), "special skill" (2 levels), and a finding of "more than minimal planning" (2 levels) the Court calculated Defendant's total offense level at 18 after a 3 level reduction for acceptance of responsibility, and a criminal history category I, resulting in a Guidelines sentencing range of 27–33 months imprisonment. Other downward departures resulted in an offense level of 17. Defendant contested the increase based on amount of loss, and none of the enhancement factors were submitted to a jury or proved beyond a reasonable doubt. Defendant was sentenced to 24 months, the low end of the Guideline range, followed by a term of 3 years supervised release. The Court subsequently corrected the sentence to 15 months. The Second Circuit Court of Appeals remanded the case to this Court to reimpose the 24 month sentence.

On June 29, 2004, Defendant was resentenced pursuant to the mandate. On the morning of sentencing Defendant raised a *Blakely* argument, which was rejected on the basis that Defendant's sentence did not exceed the statutory maximum and the enhancement of his guideline involved sentencing factors, not elements of the offense. Defendant has now filed a FED. R.CRIM. P. 35 ("Rule 35") motion to correct sentencing, arguing that there is clear error because under *Blakely* the sentence imposed is illegal and unconstitutional.

## II. Standard

Rule 35 provides that "[w]ithin 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error." FED. R.CRIM. P. 35(a). Defendant asserts that the sentence imposed on June 29, 2004 was clear error in light of *Blakely*.

## III. Discussion

Although Defendant raised a *Blakely* argument at the June 29 sentencing, his

---

1. 18 U.S.C. § 1001, which concerns fraud and false statements, provides

   Statements or entries generally
   (a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
   (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
   (2) makes any materially false, fictitious, or fraudulent statement or representation; or
   (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
   shall be fined under this title or imprisoned not more than 5 years, or both.

prior amended motion to vacate was not deemed to argue that *Blakely* invalidated upward adjustments pursuant to the USSG on the basis of a Defendant's Sixth Amendment jury entitlement which precluded reliance on facts which were not admitted by the defendant (i.e. a plea) or found by a jury.

The USSG have been found constitutional. *Mistretta v. United States,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989); *United States v. Rodriguez,* 892 F.2d 233, 234 (2d Cir.1989). "[I]n the application of the sentencing guidelines, relevant facts need be proved only by a preponderance of the evidence." *United States v. Khedr,* 343 F.3d 96, 106 (2d Cir.2003). *Apprendi* held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348. *Blakely* provides that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely,* at 2537 (citations omitted) (emphasis in original). In *Blakely,* the defendant was charged with first-degree kidnaping in accordance with Washington state laws. *Id.* at 2534–35. Pursuant to a plea agreement the charge was reduced to second-degree kidnaping, and defendant "entered a guilty plea admitting the elements of second-degree kidnaping and the domestic-violence and firearm allegations, but no other relevant facts." *Id.* Although second degree kidnaping is considered a Class B felony in Washington, and a person convicted of a Class B felony may be imprisoned for up to ten years,

> [o]ther provisions of state law ... further limit the range of sentences a judge may impose. *Washington's Sentencing Reform Act* ["WSRA"]

specifies, for [the defendant's] offense of second-degree kidnaping with a firearm, a 'standard range' of 49 to 53 months.

*Id.* at 2535 (citing Washington statute). The WSRA also provides that a sentencing judge may exceed the standard range if he finds "substantial and compelling reasons justifying an exceptional sentence." *Id,* at 2535 (citation omitted). The sentencing judge imposed an exceptional sentence of 90 months, finding that the defendant had acted with "deliberate cruelty," which allows for a permissive upward departure ground in domestic violence cases. *Id.* at 2535. However, the facts establishing deliberate cruelty were not admitted by the defendant or found by a jury, *id.* at 2534–35, and consequently "[b]ecause the State's sentencing procedure did not comply with the Sixth Amendment, [the defendant's] sentence is invalid," *id.* at 2538.

In addition to *Blakely,* Defendant relies on *United States v. Croxford,* No. 2:02–CR–00302PGC, 2004 U.S. Dist. LEXIS 12156 (D. Utah June 29, 2004) and *United States v. Shamblin,* 323 F.Supp.2d 757 (S.D.W.Va.2004). While *Croxford* and *Shamblin* extend *Blakely* to encompass the USSG, here it is not a retroactive application but is properly raised under Rule 35 since *Blakely* had been decided at the time of Defendant's June 29, 2004 sentencing.

In *Croxford,* the court determined that "the inescapable conclusion of *Blakely* is that the federal sentencing guidelines have been rendered unconstitutional in cases such as this one." *Croxford,* 2004 U.S. Dist. LEXIS 12156, at *22. The court further noted that

> [a] sentence may not be enhanced when doing so required the judge to make factual findings which go beyond the defendant's plea or the verdict of the jury. Given this rule, [a court cannot

sentence a defendant] under the federal sentencing guidelines without violating his right to trial by jury ·as guaranteed by the Sixth Amendment.

*Id.* The defendant had pled guilty to violating 18 U.S.C. § 2251(a), governed by § 2G2.1 of the USSG, which establishes a base offense level of 27. *Id.* Because the defendant had admitted certain other facts contemplated by the Guidelines, "the court could apply a 6–level enhancement, raising [the defendant's] offense level to 33." *Id.* at *23. However, the pre-sentence report also recommended a 2–level enhancement for obstruction of justice as well as an enhancement based on evidence that the defendant had victimized ·another minor, neither of which were admitted by the defendant nor found by a jury. *Id.* at *24. The court found that "additional facts beyond those contained in the indictment and plea agreement are required to apply the enhancements, and *Blakely* does not permit use of such facts." *Id.* at *32.

In *Shamblin,* the defendant pled guilty to the crime of conspiracy to manufacture methamphetamine, admitting only that he purchased Sudafed to facilitate the manufacture of, and in exchange for, methamphetamine. *Shamblin,* at 764. He also admitted "to acting in concert with others to purchase cold medicine and to possessing other chemical precursors to the manufacture of methamphetamine." *Id.* The court found that "these admissions are sufficient to sustain [the defendant's] plea to the charge of conspiracy to manufacture methamphetamine contained in the indictment." *Id.* Comparing the Washington sentencing scheme in *Blakely* to the USSG, the court found that "the exceptional sentence [in *Blakely* ] is ... [generally] analogous to an upward departure in the sentencing guidelines." *Id.* at 766 (citing U.S.S.G. §§ 1B1.1, 5K2.0( [a]2)). "[T]he upper bound of the appropriate guideline range, based on facts proven to a jury beyond a reasonable doubt or admitted by the de-

fendant, establishes the relevant statutory maximum for *Apprendi* purposes." *Id.* at 766. The *Shamblin* court found that reliance at sentencing on any factors not admitted by the defendant or found by a jury to be proven beyond a reasonable doubt is unconstitutional. *Id.* Consequently, even though under the USSG the defendant would have received life in prison because of his "unusually long" presentence report, the court found that based only on facts admitted by the defendant at his plea, the sentencing range was 6 to 12 months, and the court sentenced the defendant to 12 months, albeit noting that such sentence is "almost certainly inadequate." *Id.* at 765, 768.

Here, 18 U.S.C. § 1001 provides that a defendant violating its provisions "shall be fined ... or imprisoned not more than 5 years, or both." 18 U.S.C. § 1001(a). The USSG also provide for a maximum, within the statutory maximum. "The Sentencing Reform Act of 1984 (Sentencing Reform Act), as amended, 18 U.S.C. § 3551 et seq. (1988 ed. and Supp. III), 28 U.S.C. §§ 991–998 (1988 ed. and Supp. III), created the Sentencing Commission, 28 U.S.C. § 991(a), and charged it with the task of establish[ing] sentencing policies and practices for the Federal criminal justice system, § 991(b)(1)." *Stinson v. United States,* 508 U.S. 36, 40–41, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (quotation omitted). The Sentencing Commission was "established as an independent commission in the judicial branch of the United States ... [and] is a peculiar institution within the framework of our Government." *Mistretta v. United States,* 488 U.S. 361, 368, 384, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Fulfilling its responsibilities, the Sentencing Commission promulgated the USSG. *Id.* at 41, 113 S.Ct. 1913. The Sentencing Commission "is fully accountable to Congress, which can revoke or amend any or all of the Guidelines." *Mistretta v. United*

*States*, 488 U.S. 361, 393, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). The USSG have the force of law, and constitute binding legislative rules that a sentencing court must follow. *Stinson*, 508 U.S. at 42, 45, 113 S.Ct. 1913.

Here, the USSG provides a base level offense maximum sentence for the offense of conviction, by plea or verdict. The sentencing range and embodied maximum may be enhanced by certain factors. For Defendant, these factors are

   (1) the amount of loss to which Defendant stipulated; however, Defendant did not stipulate, and in fact denied, any causal relation to his conduct;

   (2) the more than minimum planning factor, which was neither admitted nor found by a jury; and

   (3) the breach of trust/use of skill factor, which was neither admitted nor found by a jury.

Neither *Apprendi* nor *Blakely* would invalidate the base level offense as stipulated by the plea agreement. However, as found in *Croxford* and *Shamblin*, *Apprendi* and *Blakely* apply to sentencing enhancements based on facts not admitted by the defendant or found by a jury or waived by the defendant. *Croxford*, 2004 U.S. Dist. LEXIS 12156, at *32; *Shamblin*, at 766.

In finding that *Blakely* does not permit using "additional facts beyond those contained in the indictment and the plea agreement" to determine a sentence, *Croxford* proposed three options to remedy the unconstitutionality of the USSG in accordance with *Blakely*:

   (1) the court could convene a sentencing jury, which would determine (presumably by proof beyond a reasonable doubt) whether the facts underlying the

enhancement could be proven; (2) the court could continue to follow the other sections of the Guidelines apart from the defective upward enhancement provisions; or (3) the court could treat the Guidelines as unconstitutional in their entirety in this case and sentence [the defendant] between the statutory minimum and maximum.

*Croxford*, 2004 U.S. Dist. LEXIS 12156, at *34. The first option does not apply here, as there was no conviction by a jury.[2] The second option is valid if any facts required for enhancement are subject to stipulation (by a plea) or by a jury finding, thereby avoiding a Sixth Amendment violation. The third option would reject a Congressional mandate if not followed, or would unnecessarily render the entire USSG invalid.

■ *Croxford* rejected the first two options and "by default" adopted the third. *Croxford*, 2004 U.S. Dist. LEXIS 12156, at *40. However, pursuant to the avoidance doctrine, courts generally are to construe statutes to "avoid decision of constitutional questions." *United States v. Thirty–Seven Photographs*, 402 U.S. 363, 373, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971); *see also United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408, 29 S.Ct. 527, 53 L.Ed. 836 (1909). Courts must avoid construing a statute so as to render it clearly unconstitutional if there is another reasonable interpretation available. *Edmond v. United States*, 520 U.S. 651, 658, 117 S.Ct. 1573, 137 L.Ed.2d 917 (1997).

■ In light of the avoidance doctrine's cautions about invalidating entire statutory schemes, the Court will adopt the second option, and will apply the base level of-

---

**2.** In addition, the option of convening a separate sentencing jury for every plea agreement would cause substantial resource problems for the courts and would almost certainly result in delays ultimately at the expense of defendants.

fense on the basis of facts explicit or implicit in the plea. Although the second option involves finding certain aspects of the USSG unconstitutional (i.e. the consideration of enhancements not based on facts admitted by the defendant or found by a jury), notwithstanding the avoidance doctrine courts may not ignore constitutional infirmities "to the point of disingenuous evasion even to avoid a constitutional question." *Miller v. French*, 530 U.S. 327, 341, 120 S.Ct. 2246, 147 L.Ed.2d 326 (2000). Accordingly, any enhancements based on facts not stipulated or admitted by Defendant or found by a jury will not be considered, as pursuant to *Blakely* this would violate Defendant's Sixth Amendment rights.

■ There remains an allowance for Defendant's acceptance of responsibility. The view expressed in *Croxford*, that "reducing a sentence without a jury finding .... would create a one-way street, in which the defendant would benefit from downward adjustments to the Guidelines, but would not face upward adjustments," is rejected. *Croxford*, 2004 U.S. Dist. LEXIS 12156 at *38–*39. Whether the sentence is just and sufficiently punitive is the result of Congress's scheme. Enforcing a defendant's rights is the requirement of the Constitution. *See Shamblin*, at 768 (the court's duty "is only to apply the law as [the court] find[s] it").

Ultimately, a difficult question is presented. Can a court depart upward, beyond the maximum sentence for the base level offense, and if so on what grounds? To depart upward based on facts not stipulated by a defendant or not found by a jury violates the Sixth Amendment. To depart upward in disregard of the USSG base level offense range (and resulting maximum) would ignore a Congressional mandate not found to be unconstitutional. Courts cannot ignore a law because it is viewed as resulting in an unintended, in-

sufficiently punitive result. Thus, a departure from *Croxford* is required, as its permissible consideration of traditional evidence is at odds with the maximum sentence range of the base level offense and the Sixth Amendment holding. Traditional evidence could be considered, as long as the base level offense maximum caps the sentence. In fact, *Croxford's* sentence complied with the USSG base level offense range maximum.

Here, Defendant's base level offense, minus 2 for acceptance of responsibility, produces a range of 0 to 6 months, and Defendant is sentenced to 6 months, with all other terms of the June 29, 2004 sentence to stand.

■ The Government's arguments that Rule 35 only applies after the original sentencing (held on June 5, 2003) and that pursuant to the remand from the Second Circuit the district court's resentencing was a ministerial function are unconvincing. The mandate provided that "the court is instructed to vacate [Defendant's] amended sentence and reimpose the original sentence of 24 months imprisonment, three years of supervised release, restitution in the amount of $1,046,729.00, and a $100.00 special assessment" [Doc. No. 43]. Even though the June 29, 2004 sentencing was pursuant to the mandate, it was a sentencing nonetheless. When the earlier sentence was vacated, there was no sentence, and the imposition of the new sentence triggers the clock for purposes of FED. R.CRIM. P. 35. Moreover, while the *Blakely* ruling did not exist on June 5, 2003, when Defendant was originally sentenced, it did exist at the time of the June 29, 2004 sentencing, and this Court has an obligation to consider the law as it stands at the time of the sentencing.

■ The Government also argues that there is no "clear" error under Rule 35 because Defendant had already presented

a *Blakely* argument to the Court at the June 29, 2004 sentencing, and the Court already considered and rejected that argument. However, in light of the complexity of *Blakely* and its progeny, including *Croxford* and *Shamblin,* the Court finds that there is clear error, in light of the Sixth Amendment argument, *Croxford,* 2004 U.S. Dist. LEXIS 12156, *Shamblin,* 323 F.Supp.2d 757, which was not previously decided.

The Government contends that *Blakely* is distinguishable from this case because it "does not apply to the federal sentencing guidelines because of the fact that the Washington State sentencing structure [in *Blakely*] was a statutory construction, while the federal guidelines are the creation of a Sentencing Commission, not a statute." However, notwithstanding *Blakely's* instruction that "[t]he Federal Guidelines are not before us, and we express no opinion on them," *Blakely,* at 2538 n. 9, the concern in *Blakely* was less

the origins of any sentencing structure and more the *effects* of any sentencing scheme that enhanced a defendant's sentence based on facts not admitted by the defendant or found by a jury.[3] It is also noted that the *Blakely* majority chooses a federal statute to illustrate its argument. *See id.* at 2542 (citing to 21 U.S.C. §§ 841(b)(1)(A) to support argument that prior to *Apprendi,* "with no warning in either his indictment or plea, [a defendant] would routinely see his maximum potential sentence balloon from as little as five years to as much as life imprisonment"). Morover, Justice O'Connor and Justice Breyer's dissents recognize the potential implications of *Blakely* on the federal guidelines. *See id.* at 2543 (O'Connor, J., dissenting) ("The consequences of today's decision will be as far reaching as they are disturbing.... Numerous other States have enacted guidelines systems, as has the Federal Government.... It is no answer to say that today's opinion impacts

**3.** The Ruling is replete with statements concerning the *effect* of the sentencing scheme, rather than its origins. *See e.g. Blakely,* at 2536 (citing the "longstanding tenet[ ] of common-law criminal jurisprudence: that the truth of every accusation against a defendant should afterwards be confirmed by the unanimous suffrage of twelve of his equals and neighbors") (citation omitted); *id.* at 2536 ("Our commitment to *Apprendi* in this context reflects not just respect for longstanding precedent, but the need to give intelligible content to the right of jury trial"); *id.* at 2538 ("*Apprendi* ... [helps to ensure] that the judge's authority to sentence derives wholly from the jury's verdict"); *id.* at 2538 ("the very reason the Framers put a jury-trial guarantee in the Constitution is that they were unwilling to trust government to mark out the role of the jury"); *id.* at 2540 ("In a system that says the judge may punish burglary with 10 to 40 years, every burglar knows he is risking 40 years in jail. In a system that punishes burglary with a 10–year sentence, with another 30 added for use of a gun, the burglar who enters a home unarmed is entitled to no more than a 10–year sentence—and by reason of

the Sixth Amendment the facts bearing upon that entitlement must be found by a jury."); *id.* at 2540 ("As *Apprendi* held, every defendant has the right to insist that the prosecutor prove to a jury all facts legally essential to the punishment"); *id.* at 2540–41 ("The Framers would not have thought it too much to demand that, before depriving a man of three more years of his liberty, the State should suffer the modest inconvenience of submitting its accusation to the unanimous suffrage of twelve of his equals and neighbors, rather than a lone employee of the State") (internal quotation omitted). Given the finding in *Blakely* that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant," id.* at 2537 (citations omitted) (emphasis in original), it should not matter whether the enhancement guidelines originate from the Washington State legislature or the Sentencing Commission, "a peculiar institution within the framework of our Government," *Mistretta,* 488 U.S. at 384, 109 S.Ct. 647.

only Washington's scheme and not others, such as, for example, the Federal Sentencing Guidelines.... If anything, the structural differences that do exist [between the Washington scheme and the USSG] make the Federal Guidelines more vulnerable to attack"); *id.* at 2549 (Breyer, J., dissenting) ("Perhaps the Court will distinguish the Federal Sentencing Guidelines, but I am uncertain how. As a result of today's decision, federal prosecutors, like state prosecutors, must decide what to do next, how to handle tomorrow's case"). Thus any fact on which a sentence above the statutory maximum is based must be found by a jury unless admitted. *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. Otherwise such a sentence enhancement would constitute "an increase beyond the maximum authorized statutory sentence" and "is a functional equivalent of an element of a greater offense than the one covered by the [plea]." *Id.* at 494 n. 19, 120 S.Ct. 2348.

Finally, the Government argues that even if *Blakely* applies, the sentence imposed on Defendant is a "gift" given his criminal conduct. However, as noted above, in light of *Blakely* and its progeny, Defendant's base offense level is 6, less 2 levels for his acceptance of responsibility, which results in a level 4, Category I, with a range of 0 to 6 months, by which the Court's sentencing authority is limited.

Even if the USSG were found to be unconstitutional in their entirety, this would still be the resulting sentence.[4]

## IV. Conclusion

Accordingly, as **ORDERED** in the July 6, 2004 Order Correcting Sentence, Defendant shall serve a term of 6 months, with

---

4. As noted, 18 U.S.C. § 1001 provides for a sentence "not more than five years." 18

all other terms of the June 29, 2004 sentence to stand.

SO ORDERED.